4:40 pm
Receipt No. 067163
ORIGINAL
FILED
SEP 26 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

INFRASTRUCTURE DEFENSE TECHNOLOGIES, LLC.

Plaintiff,

v.

THE UNITED STATES OF AMERICA, DEFENSE LOGISTICS AGENCY.

Defendant.

No: 07-695 C

Judge: ______________

**COMPLAINT FOR DECLARATORY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Infrastructure Defense Technologies, LLC ("Infrastructure Defense") by and through counsel, states as follows for their Complaint for preliminary and permanent injunctive relief against Defendant, the United States of America, acting by and through the Defense Logistics Agency ("DLA"), to enjoin performance of a modification of a sole source contract in violation of the Competition in Contracting Act ("CICA").

**NATURE OF THE CASE**

1. Infrastructure Defense seeks to enjoin performance of DLA's sole source modification of Contract No. SPM500-04-D-0239, for the procurement of Concertainer security barriers from Hesco Bastion Ltd. ("Hesco"), as this modification constitutes an unjustifiable procurement of the same products, although at a far higher contract value, as a sole source procurement currently under protest before this Court, in No. 07-582C (J. Merow) ("First IDT Protest").

2. DLA's illegal sole source modification violates the Competition in Contracting Act ("CICA"), 10 U.S.C. §§ 2304 *et. seq.*, and 48 C.F.R. § 6.101 (FAR), and other federal acquisition

regulations implementing competitive procedures. The sole source modification further violates DLA's representations in the First IDT Protest, made to Infrastructure Defense to avert a hearing on Infrastructure Defense's motion for a preliminary injunction.

**JURISDICTION AND STANDING**

3. This Court has jurisdiction to hear this action pursuant to 28 U.S.C. §1491(b), because Infrastructure Defense objects to an alleged violation of statute and regulation in connection with a procurement.

4. Infrastructure Defense is an "interested party" and therefore has standing under 28 U.S.C. § 1491(b) because Infrastructure Defense is a "prospective" offeror for the procurement, has an economic interest in the outcome of the procurement, and suffered prejudice.

5. Infrastructure Defense is a "prospective offeror" because DLA's modification should have been the subject of a competitive solicitation. If the modification had been the subject of a competitive solicitation, Infrastructure Defense would have competed for the procurement. *See CCL, Inc. v. U.S.*, 39 Fed. Cl. 780, 789 (1997).

6. Infrastructure Defense has an economic interest in the procurement, and was prejudiced by DLA's violations of the procurement statutes and regulations, because but for DLA's failure to competitively solicit the subject matter of the modification, Infrastructure Defense would have submitted an offer, and if the bid process were made competitive Infrastructure Defense could compete for the contract. *Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) (where the plaintiff claims that the government is obligated to rebid the contract, to establish prejudice the plaintiff need only establish that it could compete for the contract if the bid process were made competitive); *KSD, Inc. v. U.S.*, 72 Fed. Cl. 236, 247 (2006) ("when the government's actions wrongfully prevent a bidder from qualifying or bidding on a solicitation, the government cannot use the contractor's failure to qualify or bid on the solicitation

as grounds for a finding of a lack of standing"). Accordingly, Infrastructure Defense was prejudiced by the DLA's wrongful conduct of the procurement, and is an interested party with a direct economic interest in the award of the contract.

## PARTIES

7. Plaintiff Infrastructure Defense is a limited liability company with its principal place of business at 3575 Morreim Drive, Belvidere, IL 61008. Infrastructure Defense offers and sells various force protection products that compete with the barrier material products DLA seeks to procure on a sole source basis.

8. Defendant is the United States of America, acting by and through the DLA.

## FACTS

9. On August 9, 2007, Infrastructure Defense filed a protest complaint and motion for preliminary and permanent injunction with the Federal Court of Claims, in Infrastructure Defense Technologies, LLC v. U.S., Defense Logistics Agency, No. 07-582 C ("the First IDT Protest"), protesting a sole source procurement by the Defense Logistics Agency ("DLA") to Hesco Bastion Ltd. ("Hesco"). Infrastructure Defense protested DLA's proposed sole source award of a five (5) year, $250,000.000 contract for purchase of the same force protection materials at issue in this protest complaint. In the First IDT Protest, DLA agreed to stay the award of the proposed sole source contract pending resolution of the protest.

10. This protest is intimately related to the First IDT Protest.

11. On or about September 14, 2007, DLA awarded a purported "bridge" contract to Hesco. This purported bridge contract was effected through a sole source modification to an expired Hesco contract awarded in 2004, and extended in February 2007 for an additional eight (8) month period, until October 2007. The February 2007 eight (8) month extension of the contract, which the

purported bridge contract modifies, has a contract value of $150,000,000. Exhibit A (Fedbizops notice).

12. The sole source modification is attached hereto as Exhibit B.

13. The purported bridge contract modification under contract SPM500-04-D-0239, is a firm fixed price contract with economic adjustments, for a base period of three (3) months, from September 17 to December 17, 2007. The purported bridge contract has two option periods of 90 days each, for a total potential term of nine (9) months. Exhibit B.

14. The "estimated maximum value" of the base term of the purported bridge contract is $327,000,000. The two option periods are for sums of $195,000,000 each. The total value of the purported bridge contract is $717,000,000.

15. During the initial stage of the First IDT Protest, DLA through its counsel asked if Infrastructure Defense through its counsel would agree to a three month contract with Hesco to provide for the supply of Hesco Concertainer security barriers required to cover immediate, actual customer need, if any, during the pendency of the First IDT Protest. Infrastructure Defense agreed to this short term contract on the condition that it was only to meet actual minimum needs of the customer, if any, until the merits of the protest were resolved.

16. It was understood that this shorter term, limited quantity contract would preserve the status quo, in lieu of a preliminary injunction.

17. In reliance on DLA's representation that it would maintain the status quo, Infrastructure Defense did not pursue its motion for preliminary injunction in the First IDT Protest.

18. DLA did not abide by its representation. The purported bridge contract is not a bridge contract designed to meet the actual minimum needs of the customer for a three month period. To the contrary, the purported bridge contract provides for a purchase of Hesco Concertainer security barriers that bears no relationship to any customer's actual need during a three month period.

19. For example, the purported bridge contract, in its first three months alone, has a total value greater than the proposed five-year contract protested in the First IDT Protest. Further, the purported bridge contract, in the first three months alone, far exceeds the amount that DLA has ever purchased from Hesco in a one (1) year period.

20. The total value of the purported bridge contract, $717,000,000, obligates DLA to purchase more Concertainer from Hesco than it has purchased over the past seven years combined. *See* Exhibit C (Graph) (The sources of the data for this graft are www.dla.gov and www.governmentcontractswon.com). Notwithstanding this extraordinary purchase, the contracting officer, Leslie Fuller, has admitted that no government customer has requested any further supplies of Hesco Concertainer.

21. The Department of Defense Class IV Council, designated as the government body charged *inter alia*, with developing a plan for barrier material products such as security barriers, has not authorized DLA's extraordinary purchase nor has DLA advised the Class IV Council, nor sought the Class IV Council's views prior to its extraordinary purchase of Concertainer, even though Class IV Council members represent the armed forces, the ultimate customers for safe products.

22. DLA has engaged in self-help to tactically avoid any consequences arising from the First IDT Protest by purchasing vastly more Concertainer under the purported bridge than contract was contemplated under the five-year contract that is the subject of the First IDT Protest. The purported bridge contract will render Infrastructure Defense's First IDT Protest practically moot by eliminating DLA's need to enter into the five-year contract that is the subject of the First IDT Protest, thus depriving the Court of any ability to fashion an effective remedy.

23. The purported bridge contract is a flawed sole source procurement for the same reasons alleged in Infrastructure Defense's First IDT Protest. For example:

(a) DLA failed to justify its continued sole source procurement from Hesco under *any* of the statutory exceptions to the Competition in Contracting Act's ("CICA") requirement of full and open competition;

(b) DLA failed to develop performance based functional specifications for the Hesco products, preventing potential competitors from making offers;

(c) During at least the past three years, DLA has engaged in no assessment of the actual minimum needs of its ultimate customers for earth-filled security barriers, and so has failed to engage in statutorily mandated advanced planning; and,

(d) By failing to assess its actual minimum needs, DLA's decision to issue restrictive procurements far in excess of its actual minimum needs is without any rational basis.

24. The purported bridge contract was awarded in a manner in direct conflict with the representations made to Infrastructure Defense's council, and the Court, and is in no way a "bridge contract."

25. Despite an evaluation by the United States Air Force Battle lab (USAFB), attached as Exhibit D hereto, documenting that both Hesco's Concertainer and Infrastructure Defense's competing product, Metalith, are both "earth filled barrels," and comparing these competing products, DLA refuses to permit Infrastructure Defense to compete to meet the needs of the ultimate customers, the armed services.

26. Despite the fact that DLA knows that both Hesco's Concertainer and Infrastructure Defense's Metalith are certified by the U.S. Government as K-12 force protection barriers and that Metalith performed better in K-50 testing, DLA refuses to conduct a competitive procurement.

27. On May 18, 2007, The Deputy Undersecretary of Defense for Acquisition and Technology wrote Corrugated Metals, Inc., the manufacturing affiliate of Infrastructure Defense, and stated: "In addition, the Defense Logistics Agency (DLA) is working with the applicable requirements

offices to enhance competition for security barrier acquisitions." Exhibit E. Despite this statement, the sole source purported bridge contract protested here guarantees that no competitive procurement for force protection products will be held for many years.

28. During at least the past three years, DLA has engaged in no assessment of the actual minimum needs of its ultimate customers for earth-filled security barriers. Nor has DLA developed a performance based functional specification to meet those needs. Nor has DLA responded to requests from its ultimate customers for an alternative to Hesco Concertainer. Exhibit F (DLA Class IV catalogue, documenting requests from the field). Nor has DLA responded to complaints from the field that Concertainer security barriers begin to deteriorate within 6 months to one year under field conditions. When the Concentrator begins to deteriorate it loses its ability to act as a security barrier.

29. Because *inter alia*, DLA has not engaged in the advanced planning required by law, and has not acted in accordance with DOD Directive No. 5101.12 (July 16, 2005) concerning its responsibilities for joint planning with the Class IV Council for barrier material acquisitions, DLA cannot justify the acquisition of Hesco Concertainer under the purported bridge contract.

30. Further, the purported bridge contract violates DLA's representation to Infrastructure Defense that it would maintain the status quo during the pendency of the First IDT Protest. In sum, DLA has done an end-run around the First IDT Protest. In effect, DLA has awarded the contract protested in the First IDT Protest in the form of a modification to an expired sole source contract.

31. The purported bridge contract goes even further than the contract protested in the First IDT Protest to thwart competition for force protection materials, because the purported bridge contract calls for a much larger quantity and much higher contract value, and is to be performed in a much shorter time period. This accelerated purchase is arbitrary, capricious, and irrational and its audacity shocks the conscience.

32. Accordingly, the purported bridge contract must be preliminary and permanently enjoined from performance.

## CAUSES OF ACTION

### Count I:

### DLA Violated CICA and Procurement Regulations by Issuing a Modification of a Sole Source Contract Exceeding the Scope of the Original Procurement

33. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if set forth fully herein.

34. The Competition in Contracting Act of 1984 ("CICA"), requires federal agencies to "obtain full and open competition through the use of competitive procedures" except when specifically exempted by one of the enumerated statutory exceptions within CICA. 10 U.S.C. § 2304(a)(1)(A); 41 U.S.C. § 253(a)(1)(A). CICA defines "full and open competition" to mean, "that all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." Likewise, "competitive procedures" are defined as "procedures under which an agency enters into a contract pursuant to full and open competition." 41 U.S.C. § 403(5)-(6).

35. Contract modifications outside the scope of the original procurement must comply with the requirements of full and open competition. FAR § 6.001(c)

36. "A contract modification may not materially depart from the scope of the original procurement; otherwise the modification prevents . . . potential bidders from competing for what is in reality a new and different contract." *CCL, Inv. v. United States* 39 Fed. Cl. 780, 791 (1997). A contract modification that exceeds the scope of the original procurement violates CICA's "full and open competition" requirement. *Id.*

37. On January 23, 2007, DLA issued an eight month extension to its sole source contract with Hesco. The estimated value of this extension was $150,000,000 over the course of eight (8) months.

38. On September 17, 2007, DLA issued Modification P000014 ("the purported bridge contract"), again extending the sole source contract with Hesco for a base period of three (3) months. The estimated value of the three month base period is $327,000,000 and the total value is $717,000,000. Infrastructure Defense protests this modification, because it exceeds the scope of the original procurement.

39. The purported bridge contract is a Firm Fixed Price award of a sole source contract. The original procurement was an Indefinite Delivery, Indefinite Quantity contract.

40. The purported bridge contract represents a roughly 481% increase in the estimated value of the last contract modification, to purchase $150,000,000 of product over an eight month period, necessarily including a vast increase in production, over a shorter period of time. The purported bridge contract increases the estimated value per month from $18,750,000 per month to $109,000,000 per month. Upon information and belief the original procurement for three year period, 2004-2007, had an actual value of approximately $362,500,000. The purported bridge contract approaches this sum in just three months, and exceeds it by 100% over nine months.

41. The purported bridge contract is not a "bridge contract" because it is materially different from the original procurement, constituting a new, unjustified sole source solicitation, that should have been the subject of a competitive solicitation.

42. DLA violated CICA by failing to use competitive procedures and full and open competition.

43. Had the agency competed the requirements embodied in the purported bridge contract, Infrastructure Defense would have competed for the contract. DLA's conduct denied Infrastructure

Defense the opportunity to compete, causing Infrastructure Defense to suffer prejudice. For the reasons stated above, DLA's conduct violated CICA, applicable regulations, and is arbitrary and capricious, and without rational basis.

## Count II:

### DLA Violated CICA and Procurement Regulations by Engaging in Sole Source Procurement Without Justification

44. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if set forth fully herein.

45. Under CICA and its implementing regulations, an agency may use procedures other than competitive procedures only when certain statutory exceptions are met, including for example, when: (1) the supplies or services are available from only one responsible source and no other supplies or services satisfy the minimum needs of the agency; (2) the agency's need for the supplies or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals; (3) it is necessary to award the contract to a particular source to maintain a facility, or essential engineering, research or development capability, etc; and (4) the terms of an international treaty or agreement require the use of other than competitive procedures, *etc.* 10 U.S.C. § 2304(c).

46. A modification to a sole source contract must comply with CICA and applicable regulations when the modification is not adequately covered by the justification and approval issued for the original contract. FAR § 6.0001(e)(2).

47. DLA's purported bridge contract is not covered by the justification and approval issued for the original contract, because the original contract has expired, and because DLA is now aware that Infrastructure Defense offers competitive force protection products.

48. None of the statutory exceptions to CICA apply in the present case. DLA has not issued a justification in support of its sole source extension, has failed to demonstrate that a statutory exception applies, and has advised Infrastructure Defense that it has no current requirement for the products covered by its sole source procurement.

49. Instead of issuing a limited bridge contract to meet its immediate, urgent and compelling minimum needs, DLA issued by modification a three month, $327,000,000 sole source contract to Hesco.

50. Through the purported bridge contract DLA will purchase more than the five years worth of product it sought in the procurement challenged in the first IDT Protest, in only three months, eliminating the need for that five-year contract. This will render that pending protest practically moot.

51. DLA's sole source contract with Hesco is without legal justification, and denies Infrastructure Defense the opportunity to compete, prejudicing Infrastructure Defense. Had the agency competed the requirements embodied in the purported bridge contract, Infrastructure Defense would have competed for the contract.

52. For the reasons stated above, DLA's conduct violated CICA, applicable regulations, and is arbitrary and capricious, and without rational basis.

**<u>Count III:</u>**

**DLA failed to engage in Statutorily Mandated Advance Planning**

53. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if set forth fully herein.

54. 41 U.S.C. § 253(f)(5)(A) and 10 U.S.C. § 2305(a)(1)(A)(i)-(iii) require DLA to perform acquisition planning to determine the appropriate procurement mechanism to employ to best achieve the agency's goals.

55. The purported bridge contract is the result of a failure to engage in advance acquisition planning. DLA should have engaged in advance planning to determine its actual minimum needs for the period that Infrastructure Defense's bid protest is pending, and tailored its modification to meet those minimum needs, if any existed. DLA failed to determine its actual minimum needs, if any exist, before issuing a three month, $327,000,000 sole source contract with a total nine month value of $717,000,000 to Hesco.

56. DLA's failure to engage in the statutorily mandated advance planning denied Infrastructure Defense the opportunity to fairly compete, because the resulting purported bridge contract will eliminate DLA's need to enter into the five-year, $250,000,000 contract that Infrastructure Defense is currently protesting, seeking an opportunity to compete. DLA's conduct prejudiced Infrastructure Defense. Furthermore, had the agency competed the requirements embodied in the purported bridge contract, Infrastructure Defense would have competed for the contract.

57. DLA's failure to engage in the statutorily mandated advance planning is arbitrary and capricious and otherwise in violation of 41 U.S.C. § 253(f)(5)(A), 10 U.S.C. § 2305(a)(1)(A)(i)-(iii), 10 U.S.C. § 2304 *et. seq.* and 48 C.F.R. § 6.101.

## <u>Count IV:</u>

### DLA's Sole Source Modification Exceeds the Government's Minimum Needs

58. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if set forth fully herein.

59. 10 U.S.C. § 2304(c)(1) and 48 C.F.R. § 6.101 obligate DLA to obtain full and open competition in procurement.

60. Under 10 U.S.C. § 2305(a)(1)(B)(ii), and 48 C.F.R. § 11.002(a)(1)(ii), DLA must not engage in restrictive procurement exceeding its minimum needs.

61. Procurements must have a rational relationship to agency needs.

62. DLA's sole source modification does not fulfill any current need of the DLA. In particular, DLA has no need to award a $717,000,000 contract with a $327,000,000 three month value contract that is excessive and anti-competitive, and not in response to any agency's actual present need for security barriers, especially as DOD agencies have requested alternatives to Hesco barrier products due to their premature deterioration in the field.

63. The $327,000,000 modification subsumes the requirements of the proposed five year procurement that Infrastructure Defense hopes to compete for, thereby denying Infrastructure Defense the opportunity to compete and prejudicing Infrastructure Defense. Furthermore, had the agency competed the requirements embodied in the purported bridge contract, Infrastructure Defense would have competed for the contract.

64. The purported bridge contract is not in response to any present agency need, is without rational basis and in violation of 10 U.S.C. § 2304(c)(1), 10 U.S.C. § 2305(a)(1)(B)(ii), and 48 C.F.R. § 6.001, 48 C.F.R. § 6.302-1 and 48 C.F.R. § 11.002(a)(1)(ii).

## Count V:

**DLA Violated CICA And Procurement Regulations By Failing to Develop And Issue Functional, Performance Specifications and Design Requirements That Permit Full and Open Competition**

65. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if set forth fully herein.

66. CICA and applicable procurement regulations require that DLA "specify the agency's needs," "develop specifications," and solicit bids and proposals "in a manner designed to achieve full and open competition." 10 U.S.C. § 2305(a)(1)(A); 48 C.F.R. § 11.002(a)(1).

67. Procurement regulations require that "to the maximum extent practicable" an agency should ensure that procurements state requirements in terms of "functions to be performed;" "performance required;" or "[e]ssential physical characteristics." 48 C.F.R. § 11.002(a)(2).

68. Among other items, DLA failed to set forth functional, performance or design requirements and specifications such that an offeror could identify a product that was functionally equivalent to Hesco's product as required by CICA. 10 U.S.C. § 2305(a)(1)(B). Rather, the CBD notice issued by DLA for the purported bridge contract specifies the procurement of 24 national stock numbers ("NSN") without any description of the salient functional, performance, or design requirements for each of these products.

69. The only description of these 24 NSNs provided by DLA is Hesco's brand name -- "Concertainer Defense Walls." An acquisition that uses a brand name or other purchase description, such as an NSN, to specify a particular product peculiar to one manufacturer does not provide for full and open competition. 48 C.F.R. § 6.302-1.

70. Accordingly, DLA violated CICA and the procurement regulations by failing to engage in procurement that permits full and open competition by describing the functions, performance required, or essential physical characteristics of the 24 NSNs to be procured sole source.

71. Without the required qualification standards and functional specifications, Infrastructure Defense is prevented from proposing alternate products. By failing to issue functional specifications, DLA denied Infrastructure Defense the opportunity to compete, prejudicing Infrastructure Defense. Had the agency competed the requirements embodied in the purported bridge contract, Infrastructure Defense would have competed for the contract.

72. DLA's decision to procure these brand name products on a sole source basis without developing or issuing functional specifications is arbitrary and capricious, and violates 10 U.S.C. § 2305(a)(1)(A)(iii), 48 C.F.R. § 11.002(a)(2)(i), and 48 C.F.R. § 6.101.

WHEREFORE, Plaintiff Infrastructure Defense requests that it be granted the following relief:

1) A preliminary injunction staying performance of DLA's modification of Contract No. SPM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 until the Court has rendered judgment on the merits;

2) A permanent injunction and order requiring DLA to terminate the modification extending Contract No. SPM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;

4) A declaration that the sole source procurement at issue here violates statute and regulations, and is arbitrary and capricious and without rational basis.

5) A declaration that DLA should follow statute and regulation and conduct a proper competitive procurement for Class IV security barriers;

6) Such other relief as the Court deems just and proper.

Respectfully submitted,

Date: September 26, 2007

C. Joël Van Over
Randall M. Levine
David J. Prieto
BINGHAM MCCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000 telephone
(202) 373-6001 facsimile
Attorneys for Plaintiff Infrastructure Defense Technologies

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of September 26, 2007 a true and correct copy of the foregoing Complaint for Declaratory, Preliminary and Permanent Injunctive Relief was served by hand delivery upon:

Eley Bondurant
Trial Attorney
United States Department of Justice
Commercial Litigation Branch
8th Floor, 1100 L St. NW
Washington, DC 20530

David J. Harrington
Trial Attorney
United States Department of Justice
Commercial Litigation Branch
8th Floor, 1100 L St. NW
Washington, DC 20530

Douglas C. Proxmire
Counsel for Awardee, Hesco Bastion Ltd.
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037

September 26, 2007

Randall Mark Levine

CBD-NET.com | Search | Subscribe to receive Updated Notices | Non-Print Version

# 56- -Concertainer Defense Wall

Government Loan
$150,000 loan for $381/month. Apply online today!
Refinance.Low.com

GSA Contract Services
25+ yrs experience, friendly staff $2,995 complete, no hidden charges
www.gsaproposal.com

Dell™ State & Local Gov't
Get Gov't Pricing on Powerful Dell™ Powered by Intel® Centrino® Duo
www.Dell.com

Advertise

Ads by Goooooogle

# 56- -Concertainer Defense Wall

### General Information

| | |
|---|---|
| Document Type: | SNOTE |
| Posted Date: | Jan 23, 2007 |
| Category: | Construction and Building Materials |
| Set Aside: | N/A |

### Contracting Office Address

Defense Logistics Agency, Logistics Operations, Defense Supply Center Philadelphia - Construction & Equipment, 700 Robbins Avenue, Philadelphia, PA, 19111-5096, UNITED STATES

### Description

The Defense Supply Center Philadelphia (DSCP) is a Primary Level Field Activity (PLFA) and Inventory Control Point (ICP) of the Defense Logistics Agency (DLA), Department of Defense (DoD). DSCP intends to extend contract SP0500-04-D-0239, for a period not to exceed eight months from its terminal date while the new unrestricted initiative is pending. The contract will be extended from February 11, 2007 to October 11, 2007. The Hesco contract is an indefinite quantity contract for the supply of various items, collectively referred to as ?Concertainer Defense Walls? in support of the Army and Marines. Based on available data from the effective date of contract, the estimated value for the extension is $150,000,000. Hesco Bastion, Ltd. is the incumbent and will be retained for the extension based on the existing requirement to supply these items without interruption. POC: Lesley F. Fuller, Contract Specialist, Phone 215.737.3911, Fax 215.737.2612, Email Lesley.Fuller@dla.mil

### Original Point of Contact

### Place of Performance

**Address:**
HESCO BASTION, LTC., UNIT 37 KNOWSTHORPE GATE, CROSS GREEN INDSTL

EST, LEEDS LS9 0NP, UNITED KINGDOM
, UNITED KINGDOM

**Bookmark This Notice**

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE
PAGE 1 OF PAGES 1

2. AMENDMENT/MODIFICATION NO. P000014
3. EFFECTIVE DATE 07 Sep 17
4. REQUISITION/PURCHASE REQ. NO.
5. PROJECT NO. (If applicable)

6. ISSUED BY CODE SPM5E1

DEFENSE SUPPLY CENTER PHILADELPHIA
DSCP-FEPCBE2 (L.F.FULLER)
700 ROBBINS AVENUE
PHILADELPHIA, PA 19111-5096

7. ADMINISTERED BY (If other than Item 6) CODE SUK12A

DCMA Northern Europe United Kingdom
PSC 836 BOX 55
FPO AE 09420-0055
US

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

HESCO BASTION LTD
UNIT 37 KNOWSTHORPE GATE
LEEDS LS9 ONP

CODE
FACILITY CODE

(X)
9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
☒ 10A. MODIFICATION OF CONTRACT/ORDER NO. SPM500-04-D-0239
10B. DATED (SEE ITEM 13) Feb 13, 2004

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| ☐ | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| ☐ | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| ☒ | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: 43.103 |
| ☐ | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This modification establishes a bridge contract for the continued support of 24 NSNs collectively known as "Concertainer Defense Walls". The effective period of this bridge contract is from 17 September 2007 through 16 December 2007. This bridge contract also contains provisions for two 90-day extensions in the amount of $195,000,000.00 each. Total maximum value of this bridge contract including the two options is $717,000,000.00.

All other terms and conditions remain the same.

The estimated maximum value of this bridge contract is $327,000,000.00.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Patricia Laidler - General Manager

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
LESLEY F. FULLER
CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
[signature]
(Signature of person authorized to sign)

15C. DATE SIGNED
14.9.07

16B. UNITED STATES OF AMERICA
Lesley F. Fuller
(Signature of Contracting Officer)

16C. DATE SIGNED
09/14/07

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

Average Quarterly Purchases of HESCO BASTION by DLA



**DEPARTMENT OF THE AIR FORCE**
USAF FORCE PROTECTION BATTLELAB
1517 BILLY MITCHELL BLVD
LACKLAND AIR FORCE BASE TEXAS 78236-0119

4 January 2007

MEMORANDUM FOR RECORD

FROM: USAF FPB/FPT

SUBJECT: Metalith vs. Hesco - A Comparison Cart

1. The attached chart compares two types of earth filled barriers; Metalith and Hesco Bastion. The comparison was developed due to numerous requests from the field on which is better. The chart is a life cycle cost comparison based on similar sized barriers. This chart does not support one over the other; it is provided as a side-by-side comparison for civil engineering, security forces, and anti-terrorism/force protection personnel to aide in decision making. Structural strength and design information can be obtained from the Metalith and Hesco Bastion web sites.

2. Questions can be addressed to the undersigned at DSN 945-4006 or commercial 210-925-4006.

STEVEN E. BRUKWICKI, Major, USAF
Deputy Chief, Anti/Counter Terrorism Division

# Metalith or Hesco - A Comparison

| | Metalith | | Hesco |
|---|---|---|---|
| (see picture, sizes not equal) | 48' L x 12' H x 12' D | | 32' L x 9' H x 17.4' / 13.9' D |
| **($) / LF** (as tested in picture) | $502 | | $212 |
| **($) / LF** (no anti-climb & no roof) | | $354 | N/A |
| **er Material Cost ($)** | 24,096 | 16,992 | 6,784 |
| **hours to Assembly** | 96 | 90 | 51 |
| **ity (CY)** | 282 | 282 | 184 |
| **Vehicle Barrier Rating** | K-12 | K-12 | K-12 |
| **Expectancy (warranty)** | 20 Years | 20 Years | 2 Years * |
| **Cycle Cost (LCC)** (as tested) | | | |
| **LCC 1 Year ($)** | 28,296 | 20,982 | 9,409 |
| **LCC 2 Years ($)** | 29,976 | 22,662 | 28,227 |
| **LCC 5 Years ($)** | 34,176 | 26,862 | 53,850 |
| **LCC 10 Years ($)** | 42,576 | 35,262 | 105,095 |
| **LCC 20 Years ($)** | 59,376 | 52,062 | 207,585 |
| (equal lengths only) | 48' L x 12' H x 12' D | | 48' L x 9' H x 17.4' / 13.9' D |
| **($) / LF** (no anti-climb & no roof) | | $354 | $212 |
| **er Material Cost ($)** | 24,096 | 16,992 | 10,176 |
| **hours to Assembly** | 96 | 90 | 77 |
| **ity (CY)** | 282 | 282 | 275 |
| **Vehicle Barrier Rating** | K-12 | K-12 | K-12 |
| **Expectancy (warranty)** | 20 Years | 20 Years | 2 Years * |
| **LCC 1 Year ($)** | 28,296 | 20,982 | 13,694 |
| **LCC 2 Years ($)** | 29,976 | 22,662 | 28,227 |
| **LCC 5 Years ($)** | 34,176 | 26,862 | 64,561 |
| **LCC 10 Years ($)** | 42,576 | 35,262 | 137,228 |
| **LCC 20 Years ($)** | 59,376 | 52,062 | 282,563 |





| Advantages | Metalith w/ roof & w/ anti-climb | Metalith w/o roof & w/o anti-climb | Hesco |
|---|---|---|---|
| Warranty | X | X | |
| Aesthetics | X | x | |
| Reparability | X | X | |
| Reusable | X | X | |
| Anti-climb | X | | |
| Weatherability | X | x | |
| Height Stability | X | X | |
| Vertical Compression Load | X | X | |
| Individual Cell Weight | | | X |
| Assembly Time | | | X |
| LCC for 1 year | | | X |
| LCC for 2 years | | X | |
| LCC for 5 years | X | X | |
| LCC for 10 years | X | X | |
| LCC for 20 years | X | X | |

* LCC is based on warranty data; however, Hesco's have been reported as failing in as little as 6-months to 1-year.

LCC = initial material cost (assumes bulk fill is free in desert) + labor (assume $35/hr) + maintenance (assume 8 hr labor @ $35/hr, 3x/per year & bulk fill is free)
(If used in garrison, must add cost of bulk fill)
LCC 2, 5, 10, & 20 for Metalith is previous LCC + maintenance due to 20-year warranty
LCC 2, 5, 10, & 20 for Hesco is previous LCC + repurchasing, erecting, and maintenance due to 2-year warranty (tear down & removal costs not included)

Test reports for the Metalith and Hesco vehicle barrier tests are available from the USAF Force Protection Battlelab, Lackland AFB, TX Phone: 210-925-4006
Vehicles tested for this effort where heavier and faster than the vehicle specified for a DoS K-12 test rating.

DEPUTY UNDER SECRETARY OF DEFENSE
3015 DEFENSE PENTAGON
WASHINGTON, DC 20301-3015

ACQUISITION AND TECHNOLOGY

Corrugated Metals, Inc.
Attn: Kenneth E. Carlton
Vice President
3575 Morreim Drive
Belvidere, Illinois 61008

MAY 1 8 2007

Dear Mr. Carlton:

This is to inform you of our progress in addressing your concerns regarding competition for security barriers used in Iraq and Afghanistan. Since our meeting on April 16th, my staff has taken action to ensure a competitive environment exists for contracting opportunities in theater operations. Specifically, the documentation on force protection is being updated to enhance the discussion of the security product alternatives available to the warfighter. In addition, the Defense Logistics Agency (DLA) is working with the applicable requirements offices to enhance competition for security barrier acquisitions.

Concurrent with what DoD is doing, I recommend that your company initiate actions that we discussed at our meeting. Specifically, you should contact Mr. Paul Zebrowski, 703-767-1622, of the DLA, to facilitate the process of assigning National Stock Numbers for all configurations of your security system products. DLA can provide assistance to ensure CMI products are labeled correctly and the associated product descriptions are easily recognized by the user (customer) community to convey the product capabilities.

I have designated Mr. Richard Ginman of the Defense Procurement and Acquisition Policy office as my point of contact for any future communication on this issue. Mr. Ginman may be contacted at 703-695-4235, Richard.ginman@osd.mil.

I appreciate your continued interest in pursing opportunities with the Department of Defense and supporting the nation's warfighters.

Sincerely,

James I. Finley

# Defense Supply Center Philadelphia

## Construction & Equipment Products

## Class IV/VII Items

Lighting



MRO & MRO Services



Technical & Info. Equipment



Wood Products



Runway Matting



Marine Lifesaving & Diving



Safety & Rescue



Metals



Cots



Concertina Wire



Corrugated Pallets



Bastions



Sand Bags



Containers



HEPP



Drums



# Section C
# Barrier Materials

## Barricade





| Stock Number | Unit | Height | Width | Length |
|---|---|---|---|---|
| 5680-99-835-7866<br>5680-99-001-9396 | Mil 1B<br>Mil 1G | 4' 6"<br>(1.37 m) | 3' 6"<br>(1.06m) | 32'<br>(10m) |
| 5680-99-968-1764<br>5680-99-001-9397 | Mil 2B<br>Mil 2G | 2'<br>(0.61m) | 2'<br>(0.61m) | 4'<br>(1.21m) |
| 5680-99-001-9392<br>5680-99-001-9398 | Mil 3B<br>Mil 3G | 3' 3"<br>(1.0m) | 3' 3"<br>(1.0m) | 32'<br>(10m) |
| 5680-99-001-9393<br>5680-99-001-9399 | Mil 4B<br>Mil 4G | 3' 3"<br>(1.0m) | 5'<br>(1.5m) | 32'<br>(10m) |
| 5680-99-001-9394<br>5680-99-001-9400 | Mil 5B<br>Mil 5G | 2'<br>(0.61m) | 2'<br>(0.61m) | 10'<br>(3.05m) |

| Stock Number | Unit | Height | Width | Length |
|---|---|---|---|---|
| 5680-99-169-0183<br>5680-99-126-3716 | Mil 7B<br>Mil 7G | 7' 3"<br>(2.21m) | 7'<br>(2.13m) | 90'<br>(27.74m) |
| 5680-99-335-4902<br>5680-99-517-3281 | Mil 8B<br>Mil 8G | 4' 6"<br>(1.37 m) | 4'<br>(1.22m) | 32'<br>(10m) |
| 5680-99-563-5949<br>5680-99-052-0506 | Mil 9B<br>Mil 9G | 3' 3"<br>(1.0 m) | 2' 6"<br>(0.76m) | 30'<br>(9.14m) |
| 5680-99-391-0852<br>5680-99-770-0326 | Mil 10B<br>Mil 10G | 7' 3"<br>(2.21 m) | 5'<br>(1.52m) | 95'<br>(30.5m) |

The Concertainer Defense Wall is a rapidly built solid blast barrier wall built from heavy-duty galvanized wire mesh lined with a geo-textile fabric designed as a substitute for sandbags. The wall can be filled with any available material such as sand, mud, soil, rock using minimal manpower and a mechanical digger. The wall has been tested using small arms fire, machine guns, mortars and 30 mm cannon. It will also protect against indirect artillery fire up to 155 mm caliber. Uses include aircraft and headquarters location revetments, bunkers, observation posts, border crossings and fuel installations.



Point of Contact:
Tom Lauersen, Program Mgr., (215) 737-8003, DSN 444, Thomas.Lauersen@dla.mil
Colleen Obozian, (215) 737-3949, DSN 444, Colleen.Obozian@dla.mil

- NSNs listed represent a sample of items managed by DSCP.
- Part number items are also available.

# Section C
# Barrier Materials

U.S. Army Engineer Research and Development Center (Approved Fighting Positions)
**Fighting Positions come complete with Hesco Bastion, structural roof, and roof membrane.**

**Single-Bay Aboveground Fighting Position, NSN: 5680-01-501-1235**



Two-Bay Aboveground Fighting Position, NSN: 5680-01-501-1357



Aboveground Small Observation Post, NSN: 5680-01-501-1462



Point of Contact:
Tom Lauersen, Program Mgr., (215) 737-8003, DSN 444, **Thomas.Lauersen@dla.mil**
Colleen Obozian, (215) 737-3949, DSN 444, **Colleen.Obozian@dla.mil**

- NSNs listed represent a sample of items managed by DSCP.
- Part number items are also available.

Section C
Barrier Materials

## METAL REVETMENT, CORRUGATED GALVANIZED STEEL

U.S Army Engineer Research and Development Center (ERDC) in response to a request from US Central Command (CENTCOM) was tasked to develop an alternative to soil-filled geotextile revetments. This request was based on longevity issues related to the soil-filled geotexitle revetments exposed to severe environmental conditions. The design was based on the existing Air Force Technology on corrugated metal revetments, Type B-1. The new (ERDC) design takes into account reduced footprint to meet base camp logistical requirements and weapons threats seen in theater.

20 FOOT CONTAINER: 10 REVETMENTS PER CONTAINER.

NSN: 5450-01-535-7952 Metal Revetment, MR-1
Size 4 ft wide x 8 ft high x 64 ft long
UI: ea, over all pallet size 37" wide x 100" long x 19" high, total weight 4,535 lbs

NSN: 5450-01-535-7955 Metal Revetment, MR-2
Size 2 ft wide x 6 ft high x 104 ft long
UI: ea, over all pallet size 37" wide x 100" long x 19" high, total weight 4,329 lbs

NSN 5450-01-537-7061 Metal Revetment, MR-3
Size 4 ft wide x 10 ft high x 48 ft long
UI: ea, over all pallet size 37" wide x 100" long x 19" high, total weight 4,401 lbs





Point of Contact:
Tom Lauersen, Program Mgr., (215) 737-8003, DSN 444, Thomas.Lauersen@dla.mil

- NSNs listed represent a sample of items managed by DSCP.
- Part number items are also available.